Council, the first case today is number 171577, United States v. Ricardo Montanez-Quinones. Okay, thanks, Dan. Thank you. I'd like to reserve one minute for rebuttal, Your Honors. You may. Good morning, Your Honors. Good morning. A defendant in this case was convicted of possession of child pornography. He was convicted on a plea of guilty. He pled pursuant to a plea agreement. That plea agreement was to a specified guideline calculation, and one part of that calculation was a two-level enhancement for distribution of child pornography. That enhancement is one of the issues on this appeal. Isn't that issue pretty well determined by our recent decision in the United States against Cates? Yes, Your Honor, and this year in July you had issued the decision in Cates. I think this case is very different from the decision in Cates. In Cates, the court said you can find it knowing distribution based on circumstantial evidence, and Cates had a lot of circumstantial evidence. And this case doesn't? This case doesn't. A fellow who has two separate degrees in computer proficiency? This case doesn't have anything like the circumstantial evidence that Cates has. It's true. But what about what Judge Sellier just said about his computer proficiency? The defendant has a B.A. in computer science and an associate's degree in computer networks. These are 10- and 14-year-old degrees in a fast-changing industry. The defendant wasn't employed in the computer industry, unlike Cates. He was a produce supervising manager for a produce company. He does have those degrees. He does have some computer knowledge, but he wasn't working in it. He did say he was skilled in computers, but he said that in context of his employment. He said skilled in computers, logistics, inventory management, and accounting principles. Counsel, weren't there file sharing involved in both cases? I was indifferent. Not the same kind of file sharing, but that phenomenon was present in both cases, was it not? Well, both cases used a peer-to-peer file sharing program. But in Cates, you have all sorts of evidence that the defendant knew exactly how this file sharing program worked. The defendant admitted that he changed, that he specially configured the computer program relating to the peer-to-peer file program that he downloaded to his computer. He specially configured it so it bypassed the master. But your client downloaded and deleted. Yes, Your Honor, he did. And the court found, the district court found, that he made a selection on these two devices. He had a desktop and a laptop. And he selectively downloaded. Okay, that finding is clearly erroneous. There is no evidence in this record that the defendant picked or chose or selected in any way. There's no evidence in this record at all. The government didn't put on any evidence. All we have is two computers with files on them. You have 1,000 files on this computer of child pornography. You have erased files. You have incomplete files. And you have files in a shared folder. There's no evidence on this record that files went in and out of that shared folder. You have 71 files in a shared folder. You don't have any evidence that those 1,000 files over here at any time traveled through that shared folder. So they don't say anything about the defendant's knowledge of that shared folder. The judge assumes that he took files out, that he downloaded all 2,000 that he erased from the program into the shared folder and out of the shared folder. There's no evidence in the record of that. All we have is a computer with files on it. What is the purpose of having a program with shared files? Why would one have such a sharing capacity? You would download this program, this peer-to-peer file sharing program, so that you can get child pornography. You download the program so that you can get child pornography from other people's computers. And it downloads to your computer. But doesn't the fact that you're receiving demonstrate the capacity to share? No, no, it doesn't. Other people are sharing with him, aren't they? After the fact, forensic examination determined that, yeah, there were files being shared out of that shared folder. But since the amendment, you can't just prove that he used a peer-to-peer file sharing network. You have to prove that he knew that file sharing network was sharing with other people, not just sharing with him. You download it so it shares with you and gives you your files into your shared folder. What Kate says is that you can prove that by circumstantial evidence. Contrary to what you say in your brief, you don't need direct evidence. And it boggles my mind that you stand there and say there isn't enough circumstantial evidence for a district judge to make a finding by a preponderance of the evidence, which is what Judge Cerezo did here, that this was a knowing use on his part. Your Honor, there is no evidence, not some, no evidence. The questioning from my colleagues has pointed out lots of evidence in the record from which an inference can be drawn. There's no direct evidence. Okay, Your Honor, I'm never saying you have to. First of all, I don't say you have to have direct evidence. I do argue that it's a good idea to figure out how these programs run. But you don't have to have direct evidence to decide this case. You don't have to have evidence of how the ARIES program runs. You just have to have some evidence that he knew this program was sharing files. And you don't have that here. You have files in it. But isn't that where his sophistication with computers comes into play? I think the inference is that given that trained sophistication, he did understand what the capacity of this program afforded. Well, Your Honor, to find knowing distribution in this case, you have to find that some computer education results in knowing, is a presumption that when you download a peer-to-peer file sharing program, you know how it operates. Is it together with the length of time that he used the system and the number of images that were involved? Your Honor, he downloaded a lot of images. That's not proof that he knew he was sending them out. He used the system for a lot of time, right? Well, you know, Your Honor, truthfully, everybody in this courtroom uses technology. They don't know how it works, and they use it for a long time. I used my cell phone for years. I don't know how it works. We're attorneys. We really don't even know about this stuff. We don't know how these file sharing programs work. You cannot deduce from the evidence in this record, from the evidence of files on this computer, that files ever moved in and out of that shared folder. You have no evidence of that. And that's the judge's conclusion, that he picked and he chose and he selected files to move in and out of that shared folder, so that shows he knows he's sharing outward. But there's no evidence that files ever moved in and out of that. But those thousand files on his hard drive ever moved in and out of that other shared folder. I mean, since you're running out of time, did you want to say anything about your other points? Well, Your Honor, yes. You don't have to. You can always stick with what you think is your best argument. Well, I just want to say that I will stick with this point, and I will just say that there were a lot of admissions in Kate's. He admitted he knew how the peer-to-peer file sharing worked. He showed expertise with the BitTorrent system and how it gathered from different computer seeds. He reconfigured his computer. He worked in the computer industry. But most importantly, he admitted he could shut off and stop the flow to that shared folder. That was an admission of his. Nothing like this here. This defendant admitted he downloaded and searched for pornography. You have no admission that reflects on his knowledge that the files in the shared folder were being shared with other people. You have here two old degrees in a fast-changing computer industry. The change in the guidelines required knowing distribution. Before that, we presumed that when you downloaded a peer-to-peer file sharing program, you knew what it was doing. We can't presume that anymore. You need circumstantial evidence to support knowledge, and you don't have that here, Your Honor. Thank you. Good morning. May it please the Court. Julia McIgnatis for the government. I apologize. I have a cold. If Your Honors don't understand what I'm saying, I'll gladly repeat it. We'll tell you to speak up if we can't understand. Thank you, Your Honor. The district court properly concluded that there was sufficient evidence on the record to establish by a preponderance of the evidence that the defendant here knowingly distributed child pornography through abuse. Give that your best shot. Tick off for us what the evidence is from which the district court could draw that inference or base that finding. Yes, Your Honor. The district court specifically mentioned two separate things. One was that he was a sophisticated user, drawing on his degrees in computer science, in computer networking, his self-professed computer savvy skills, and the fact that he wanted to pursue a master's in computer networking. When we look at his education and his background, this court has even said in the TR Radio case, which was the distribution of child pornography beyond a reasonable doubt, it wasn't for a sentencing enhancement, that you can look to the circumstantial evidence regarding your education and your background in determining whether there is knowledge. How is educational attainment in this particular field relevant for that inquiry, given that it is such a changing technology? Yes, Your Honor. I agree that it is a changing technology, and as the years go by, it has become more complex. But by its very nature, computer networking is the linking of two computers to have the free flow of information. And someone, even if they graduated in high school in 1999, the defendant and I are the same age, and at the time that I was in high school and college, these computer peer-to-peer programs were available, and that sharing of knowledge was available back then. So even though this is today, in 2016, I believe when these events happened, that technology was well in play. But that wasn't the only thing that the district court did. And even, taking a step side, even prior to the amendment, when there was a circuit split, where certain circuits required the knowledge element prior to the 2016 amendment, many circuits, including the Second Circuit, as cited in our brief, noted that an individual's tech savvy and their sophisticated computer use is sufficient, can be used in determining whether their circuits... Now, wait a minute. You just used the word sufficient. Let's line things up. Computer sophistication is relevant. But you're not arguing, are you, that that alone is sufficient to show knowing distribution? No, Your Honor. We're saying in this case there was two things. So let's assume that you've got a showing of a savvy or sophisticated user. What else did the district court do? Well, we have the way that this individual's computer was set up. The fact that the forensic report shows that there were files that were downloaded and then erased. There were different numbers of files that were in the shared folder. There was incomplete downloads. The district court said the way that the forensic analysis of these two different computers showed that this individual used his knowledge to choose which items he wanted here nor there. Now, in a public speech... What does all of that have to do with distribution? Evidence that he was using what he had in the files, that he was using it in a certain way. What does that tell us about distribution? Well, yes, Your Honor. The fact that there's only a limited amount of files gives rise to the inference that if he had all of these files that were available on his computer, in one computer it was in excess of 1,000 files, and then only 15 on one and I believe 74 on another were in the shared folder, there is some sort of picking and choosing going on as to which ones I want to make available for others to be able to download from me. Isn't that just picking that he knew what he wanted as opposed to he knew what he wanted to share? Well, the numbers don't match, Your Honor, because if he had on his computer in a separate folder 1,000 images but only 74 and 15 on another, that shows that there is some sort of selection that is going on in that case and that's precisely what the district court found. I'm sorry, I'm still trying to figure out why that's not selection for personal taste as opposed to selection to share, to distribute. Well, Your Honor, if you have a smaller number of what you are distributing, because I believe it's specifically said in his... I'm trying to figure out why isn't it a smaller number of what he's using? Of what he's sharing? No, what he's using. He's downloading it to look for whatever period of interest he has. Why isn't that just the answer as opposed to he's downloading specific images? You want us to infer that he downloaded those specifically to distribute to others. I'm trying to figure out where that next link comes in. Well, it appears, or at least what the district court determined, that if there was 1,000 child sex abuse images and then there's only 15 that are on the shared ARIES folder, that those are the images that he's choosing to share when he has other images. So are you saying that the images that he wanted to view himself, he could view without putting them in the file-sharing folder? Yes, Your Honor. And that, therefore, the selection of certain images to put in the file-sharing folder is indicative of an intent to share them? Exactly, Your Honor, and that's precisely what the district court found. And this court has said when there is... Yes, Your Honor. Because it's gelling a little bit. So the images, the 1,000 images that were in one folder... Yes, Your Honor. Was that from a file-sharing folder or did he download 1,000 images which he then selectively took 15 and put in a sharing folder? Well, the evidence that we have is that one of his laptops had 26 images and then there was over 2,000 that had been downloaded and erased, 71 incomplete downloads, and 74 child abuse files being shared on ARIES. That was his laptop. And then there's similar numbers for his desktop. So the numbers don't match, which gives rise to the inference that of the ones that he had, only a specific few were being included on the sharing folder. Counsel, once they're in a sharing file, does he have to take some further step to actually then share what's in that sharing file? Or is it once in a sharing file, they then become available to others without him having to do anything else? Your Honor, admittedly, that evidence is not on the record and different peer-to-peer programs operate in different ways. However, when the defendant in Cates attempted to make a similar argument that even though there is some circumstantial evidence, we need to see whether the individual opted out or whether this was something that happened by default, this court found that that argument was a red herring. The proper inquiry here is looking at the circumstantial evidence. Was the court clearly erroneous in its determination that the defendant here knew what he was doing? So it was the notion that if he took the trouble to put some of these images in a sharing file, one with the capacity to share, he did it with the intent to share? Is that the inference? Yes, Your Honor, that's the inference that was made by the district court. And when there's two plausible inferences on a record, the district court's selection of one of these inferences cannot be clearly erroneous. And like I said, it's not in the vacuum. But aren't you saying then that automatically putting something in a shared file means that we can infer distribution without anything else? I mean, that seems to be what you're arguing. Well, Your Honor, in this case I'm saying that we actually have something more because there may be a situation, or when you look at the court's way that they explained the facts in Cates, that like the defendant in Cates, Mr. Montaignez was no Luddite. He has this background in computers. He has two different degrees. He is self-professed computer savvy. And when you take these facts with the way that his computer forensics, the way the computer forensic report illustrated how his computers were set up, that gives rise to the inference that the selection of fewer images in the Aries shared download file is sufficient for the district court to conclude by a preponderance of the evidence such that that determination is not clearly erroneous. Was there any evidence in the record as to how long he had used or accessed this file sharing program? Your Honor, I believe in his plea agreement. I know that in Cates he had used it for three years. And in his plea agreement, no, it does not say how long he had been using the Aries program. I thought he admitted he had used it for five years. That's what I thought, too. I had that number, but I didn't want to, without, I don't know if I read it in the PSR, I just didn't want to say that. Well, if it's in the PSR and it's not objected to, then it has evidentiary weight. That's fair, Your Honor. It was just, I just could not remember off the top of my head, and I didn't want to induce the court into error by saying five years, where in Cates the court noted that it was three. If there's no further questions, I will rest on my brief. Your voice got stronger. First of all, to address that question immediately, there is no evidence in the record of how long the defendant used this file-sharing program. Well, what about the pre-sentence report? The what? The pre-sentence report. It isn't in the pre-sentence report. There is no five years in the pre-sentence report. Okay. In the governments below, the government contested that, said that he used it for five years. The government also said that he admitted he knew how peer-to-peer file-sharing networks worked. But the district court specifically found that there was no support in the record for those assertions. So there's nothing in the record about how long he used it or that he had any knowledge of how peer-to-peer networks worked. And the district court said that in their order. They said the government said blah, blah, blah, but there is no support in the record for this contention. So there isn't any support in the record for how long he used it. And also, Your Honor, I think there's a basic misconception going on. I just want to note that the note from my clerk indicates that five years is found in Appendix 30. I'll check it out when I get back to the office. I think the government's side is to Docket Entry 41. Docket Entry 41 is the government's amended response below. Then the court had an order from that amended response in which the court found there's no support in the record for that assertion, that he knew about peer-to-peer file-sharing records or that five years. And I couldn't find the five years anywhere in the PSLR or anywhere in the plea agreement or anywhere at all. And I just think there's a basic misconception going on here about where those files come from that are on the computer. He could have gotten them anywhere. Many of these defendants have multiple peer-to-peer file-sharing programs. He could have gotten them from an old peer-to-peer file-sharing program that he took them off out of the shared folder and saved. We don't know that. Why do we not know that? Because there's no evidence in this record. He could have gotten them from a UBS port that you plug into your computer from someone else. There's no evidence in this record about where those files came from. Thank you, ma'am. Thank you.